IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| CARLISLE POWER TRANSMISSION PRODUCTS, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 07-3366-CV-S-ODS |
| UNITED STEELWORKERS OF AMERICA, et al., | ) ) ) ) | |
| Defendants. | ) | |

<u>ORDER AND OPINION DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

Pending are Plaintiff's Motion for Summary Judgment (Doc. # 26) and Defendants' Motion for Summary Judgment (Doc. # 29). For the following reasons, Plaintiff's Motion is denied, and Defendants' Motion is granted.

<u>I. BACKGROUND</u>

Plaintiff, Carlisle Power Transmission Products, Inc. ("the Company"), filed the above-captioned action pursuant to section 301 of the Labor Management Relations Act, <u>see</u> 29 U.S.C. § 185, seeking to vacate the award of arbitrator Anthony C. Salucci. Defendants, the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO-CLC, and USW Local Union No. 662 (collectively "the Union"), counterclaimed seeking confirmation and enforcement of the award. The matter is now before the Court on the parties' cross-motions for summary judgment.

The Company operates a manufacturing plant in Springfield, Missouri. The Company and the Union have entered into a series of collective bargaining agreements covering production employees at the Company's Springfield facility. The Union filed several grievances during the term of a Collective Bargaining Agreement that was in

effect from April 1, 2001, to March 31, 2006 ("the 2001 Agreement"). The Company and the Union currently operate under a Collective Bargaining Agreement that took effect on April 1, 2006 ("the 2006 Agreement").

Both Agreements contain a Grievance Procedure located at Article 41. See Doc. # 1, Exh. A at 58, Exh. B at 59. The Grievance Procedure is a four step process, ending with binding arbitration if a grievance remains unresolved after steps one through three.

Article 41, Section 1 of both Agreements contains the following language:

> A grievance shall be defined as a difference or a dispute arising during the term of this Agreement between the Company and an employee or employees as to the meaning, interpretation or application of the express provisions of this Agreement.

Additionally, Article 41, Section 9 of both Agreements contains the following language:

> The arbitration provision will not be in effect after the expiration of this Agreement. Any matter not fully arbitrated before the expiration of this Agreement will not be arbitrated after this Agreement expires, except by written agreement between the parties, continuation of this Agreement through extension (s) or as provided by a subsequent Agreement.

Prior to the expiration of the 2001 Agreement, the parties resolved several pending grievances by reaching agreement or settlement; however, three grievances were not resolved. The parties continued to discuss possible settlement of these three grievances after the expiration of the 2001 Agreement and while operating under the 2006 Agreement, but were unable to reach settlement. Therefore, the Union requested arbitration of the three grievances. The Company responded in writing on May 8, 2006, stating that the grievances were not arbitrable pursuant to Article 41, Section 9.

The parties agreed to arbitrate the issue of arbitrability. An arbitration hearing was held on July 25, 2007, and both parties submitted briefs in support of their respective positions after the hearing. The issue before the Arbitrator was whether Article 41, Section 9 of the Collective Bargaining Agreement precluded the arbitration of the three grievances that arose while the 2001 Agreement was in effect but that remained unresolved upon its expiration.

The Arbitrator ultimately determined that the grievances were arbitrable. The

issue now before the Court is whether the arbitration award should be vacated, or, instead, judicially enforced.

## II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Get Away Club, Inc. v. Coleman, 969 F.2d 664 (8th Cir. 1992). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588-89 (1986); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

## III. DISCUSSION

Under section 301 of the Labor Management Relations Act, the court must review an arbitrator's award to determine (1) whether the parties agreed to arbitrate, and (2) whether the arbitrator had the power to make the award. See, e.g., Keebler Co. v. Milk Drivers & Dairy Employees Union, Local No. 471, 80 F.3d 284, 287 (8th Cir. 1996). Here, the parties agreed to arbitrate the arbitrability of the three grievances, so the only issue before the Court is whether the arbitrator had the power to enter the award providing for the arbitration of the grievances.

A court must give "an extraordinary level of deference" to an underlying arbitral award. Boise Cascade Corp. v. Paper Allied-Indus., Chemical and Energy Workers, 309 F.3d 1075, 1080 (8th Cir. 2002) (quoting Keebler, 80 F.3d at 287). Specifically, courts are not allowed to reconsider the merits of an award, "even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." Bureau of Engraving, Inc. v. Graphic Communication Int'l Union, Local 1B, 284 F.3d 821, 824 (8th Cir. 2002) (quoting United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36 (1987)). Therefore, the award must be upheld so "long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." Id. (quoting Misco, 484 U.S. at 38).

On the other hand, an arbitrator's authority is not unlimited. Missouri River Servs., Inc. v. Omaha Tribe of Nebraska, 267 F.3d 848, 855 (8th Cir. 2001). An award must be vacated if it is "completely irrational." Hoffman v. Cargill Inc., 236 F.3d 458, 461 (8th Cir. 2001). "An award is 'irrational where it fails to draw its essence from the agreement.'" Boise Cascade Corp., 309 F.3d at 1080. The award "draws its essence from the parties' agreement as long as it is derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention." Id. (internal quotations omitted). "The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract." Misco, 484 U.S. at 38.

At the hearing and in its brief to the Arbitrator, the Company argued that the plain language of the contract is unambiguous: upon expiration of the 2001 Agreement, the unresolved grievances were no longer subject to arbitration. Conversely, the Union argued that by adopting the 2006 Agreement, which also provided for arbitration of grievances, the pending grievances were subject to arbitration pursuant to "a subsequent Agreement," as provided by Article 41, Section 9. Arbitrator Salucci ultimately agreed with Union.

The Court must defer to Arbitrator Salucci's award. While acknowledging that during negotiations the Company had stated on more than one occasion that it believed

4

Article 41, Section 9 precluded arbitration of the remaining grievances, Arbitrator Salucci found the Company had demonstrated that it recognized the Union's position to be correct by continuing to seek resolution of the three grievances after expiration of the 2001 Agreement.

The Company states that the Arbitrator's award ignores the plain language of the agreement, and therefore fails to draw its essence from the agreement. The Court disagrees. Arbitrator Salucci found that the Company's conduct supported the Union's position that an exception contained in Article 41, Section 9 applied. As this exception is contained in the agreement, the award draws its essence from the agreement and must not be disturbed by the Court. Conversely, if Arbitrator Salucci determined that by continuing to process the grievances, the Company had waived any agreement that the grievances were no longer arbitrable, this decision would also be drawn from the written agreement. In either scenario, the Court must give deference to the award. Accordingly, Arbitrator Salucci's award is confirmed and shall be enforced.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is denied, and Defendants' Motion for Summary Judgment is granted.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
DATE: July 16, 2008　　　　　　　　　　　　UNITED STATES DISTRICT COURT